[PUBLISH]

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12308

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 12, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00090-CV-MMP

UNITED STATES OF AMERICA,

 Plaintiff
 Counter-Defendant-
 Appellee,

 versus

JACK CARL RYALS,

 Defendant
 Counter-Claimant
 Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 12, 2007)**

Before ANDERSON and MARCUS, Circuit Judges, and ALTONAGA,[*] District
Judge.

_____

[*] Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

Jack Carl Ryals ("Mr. Ryals") appeals the district court's grant of summary judgment in favor of the United States of America (the "Government") on its complaint, and the court's dismissal of certain counts, and summary judgment on other counts, of Mr. Ryals' counterclaim. The Government filed suit against Mr. Ryals seeking to reduce certain tax assessments to judgment. Mr. Ryals filed a ten-count counterclaim for tax refunds.

The lower court granted the Government's motion for summary judgment, dismissed counts one through eight of the counterclaim on the basis that it did not have subject matter jurisdiction to entertain them, and granted summary judgment for the Government on counts nine and ten (the remaining counts) of the counterclaim. Mr. Ryals argues that summary judgment was improvidently granted because the applicable statute of limitations had expired prior to the Government's suit. Mr. Ryals also asserts that the lower court erred when it dismissed the counterclaim, finding (1) that Mr. Ryals did not follow the proper administrative claim procedure as a prerequisite to his first eight claims, and (2) as to the final two counts of the counterclaim, that Mr. Ryals had not shown he had overpaid any tax and was not entitled to exemption from levy. Finding no error in the lower court's decision, we AFFIRM.

2

## I. BACKGROUND

Mr. Ryals failed to pay his federal income taxes for the 1977 and 1978 tax years. In 1989, the United States Tax Court entered a decision[1] finding that Mr. Ryals was liable for deficiencies in income tax and statutory additions for the 1977 and 1978 tax years. In June of 1989, notices of the assessment and demand for payment were issued to Mr. Ryals. The total amount of deficiencies, statutory additions and interest assessed was $526,465.

Despite the notices of the assessment and demand for payment, Mr. Ryals did not pay the federal income tax assessed for 1977 and 1978. By March 31, 2003, he owed the sum of $1,678,065 for these two tax years.

Between the notices of the assessment and March 31, 2003, Mr. Ryals, who had previously been convicted of a criminal tax offense, submitted two offers in compromise to the Internal Revenue Service ("IRS"). The first offer in compromise was presented on August 18, 1997, and related to the 1977 and 1978 tax years. The offer in compromise was presented on a form that provided that the statute of limitations on an assessment would be suspended during the period that the offer was pending and for one year thereafter. By letter dated July 17, 1998, Mr. Ryals appealed an initial rejection of the offer, but on January 7, 2000, he

---

[1] See Jack C. Ryals v. Comm'r, Docket No. 29418-84 (February 28, 1989).

faxed and mailed a withdrawal of the offer, requesting that the IRS re-commence the running of the tax collection statute expiration date. Notwithstanding the January 7, 2000 communication, the offer was finally rejected on January 25, 2000.

On June 14, 2000, Mr. Ryals submitted a second offer in compromise that also related to the 1977 and 1978 federal income tax liabilities assessed. He appealed an initial rejection of that second offer by letter dated July 11, 2001. The second offer was finally rejected on March 12, 2002.

Each offer in compromise was submitted to the IRS on Form 656. Subsection (m) of Form 656 contains the following pertinent language: "The offer is pending starting with the date an authorized IRS official signs this form *and accepts my/our waiver of the statutory period of limitation*. The offer remains pending until an authorized IRS official accepts, rejects, returns or acknowledges withdrawal of the offer in writing." (Doc. 33, Exs. A & C) (emphasis added).[2] Furthermore, subsection (n) provides that "[t]he waiver and suspension of any statutory periods of limitation for assessment . . . continue[s] to apply: . . . while the offer is pending. . . [and] for one additional year. . . ." (Id.). An authorized

_____

[2] Form 656 was revised in 2000. The form Mr. Ryals used for his second offer in compromise did not contain the language shown in italics.

IRS official signed each of the forms submitted.

During the offer in compromise process and thereafter, Mr. Ryals maintained that the revenue officer had improperly failed to allow him a statutory exemption amount under 26 U.S.C. § 6634(a)(9) because the officer was erroneously imputing tenants-by-the-entirety income to him. Thus, in May 2000, Mr. Ryals submitted Forms 1040-X, Amended United States Individual Income Tax Returns, seeking the refund of amounts he maintained had been improperly and unlawfully seized by the IRS and applied to his tax deficiencies from 1992 to 1999. Mr. Ryals and his wife had filed joint federal income tax returns for the tax years 1992 through 1999. While the Forms 1040-X that Mr. Ryals sent in May 2000 appear to have been received by the IRS, they were returned to Mr. Ryals because they included only Mr. Ryals' signature and Social Security number, not his wife's. The refund claims were returned to Mr. Ryals without processing by the IRS.

Mr. Ryals and his wife also filed joint federal income tax returns for the 2000 and 2001 tax years. In September 2002, Mr. Ryals filed a Form 1040-X (also missing his wife's signature) for the years 2000 and 2001, seeking a return of what he again maintained were illegally seized earnings. On April 28, 2003, he filed a second set of Forms 1040-X and included his wife's signature. On May 28,

5

2003, the IRS disallowed the claims in full.

The Government filed suit on May 20, 2003, seeking payment of the federal income taxes assessed by the Tax Court for the years 1977 and 1978. The sum requested was $1,678,065.01, plus fees and interest from March 31, 2003. Among the defenses raised by Mr. Ryals was a statute of limitations defense. He also presented a ten-count counterclaim seeking refund of taxes he maintained had been erroneously and illegally collected for the years 1992 to 2001. The total demand in the counterclaim was $166,250.00, plus interest and costs. Each count corresponded to a different tax year.

The district court entered judgment on December 8, 2005. This appeal was timely filed.

## II.   STANDARD OF REVIEW

The parties agree that each of the issues presented involves a question of law subject to *de novo* review. See Broughton v. Fla. Int'l Underwriters, Inc., 139 F.3d 861, 863 (11th Cir. 1998). The construction of federal statutes, including statutes of limitations, is a question of law. See United States v. Gibson, 434 F.3d 1234 (11th Cir. 2006). Furthermore, an order granting summary judgment is reviewed *de novo*. See Dixon v. Burke County, 303 F.3d 1271, 1274 (11th Cir. 2002).

## III.   ANALYSIS

### A.   Tolling of the Statute of Limitations by the Offers in Compromise

Mr. Ryals first asserts that the lower court erred in concluding that the complaint for collection after assessments was timely filed.  The lower court's decision, and this Court's *de novo* review of that issue, depends on a detailed review of the facts presented as applied to several revisions in the applicable statutes.  Before embarking on that review, it bears noting that statutes of limitations that bar the collection of taxes otherwise due and unpaid, as they are here, are strictly construed in favor of the Government.  See Atl. Land & Improvement Co. v. United States, 790 F.2d 853, 858 (11th Cir. 1986); see also Lucia v. United States, 474 F.2d 565, 570 (5th Cir. 1973) ("[A] period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense.  Absent Government consent, no limitations defense exists.") (citations omitted).

When a taxpayer fails to pay assessed taxes after notice and demand, the Government may bring a suit to reduce the assessment to judgment.  See 26 U.S.C. §§ 7401-7403.  Under 26 U.S.C. § 6502(a)(1),[3] the Government has ten years from

---

[3] At the time Mr. Ryals submitted his first offer in compromise on August 18, 1997, section 6502(a)(2) provided in part:

7

the date of an assessment to collect a federal tax liability by bringing suit.

Offers in compromise operate as one way to suspend the running of the ten-year statute of limitations. See 26 U.S.C. §§ 6331(k) and (i)(5). Offers in compromise contain a waiver of the limitations period in order to enable the Government to consider the offer without the prejudice resulting from a running of the limitations period against collection of the tax. See United States v. Ressler, 576 F.2d 650, 652 (5th Cir. 1978) (citations omitted). "The running of the statutory period is suspended until the offer of compromise is terminated, withdrawn, or formally rejected." Id. (citation omitted). Furthermore, one additional year is added to the suspension period in accordance with the parties' agreement as contained in the Forms 656 used by the taxpayer and the IRS here.

An attempted withdrawal of an offer in compromise by the taxpayer, as Mr. Ryals attempted to effect with his 1997 offer, becomes effective only once an

---

(a) Length of period. – Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun –

&ast; &ast; &ast;

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10-year period (or, if there is a release of levy under section 6343 after such 10-year period, then before such release).

authorized IRS official "returns or acknowledges withdrawal of the offer in writing," as is stated in the Form 656 submitted. See also United States v. Donovan, 348 F.3d 509, 512 (6th Cir. 2003) (offer ceases to be pending for purposes of statute of limitations when IRS officer, in writing, "accepts, rejects or acknowledges withdrawal of the offer"). While Mr. Ryals certainly communicated his withdrawal of the first offer in compromise, no written acknowledgment of the withdrawal by an IRS official was ever made.

Mr. Ryals' tax liabilities were assessed on June 22, 1989, and this event triggered the ten-year statute of limitations. In the absence of any offers in compromise or statutory provisions altering the ten-year period, the statute of limitations on collection would have expired on June 22, 1999. A little less than two years before the expiration of the limitations period, on August 19, 1997, the first offer in compromise was submitted. This offer had the effect of suspending the ten-year statute of limitations for the time it was pending, plus one additional year. The Appeals Office rejected the first offer on January 25, 2000. Thus, the limitations period was extended by three years, five months and seven days, from the original deadline of June 22, 1999 to November 29, 2002.

However, just over one month was added to this extension by Congress' passage, during the pendency of the first offer, of the Internal Revenue Service

9

Restructuring and Reform Act of 1998 ("Reform Act"), Pub. L. No. 105-206, § 3461(c)(2),112 Stat. 685, 764 (1998). The Reform Act took effect on January 1, 2000, and applied to requests to extend the period of limitations made after December 31, 1999. See Reform Act at § 3461(c)(2), 112 Stat. 685, 764. As to requests to extend the limitations period made on or *before* December 31, 1999, however, the Reform Act amended section 6502(a)(2) and provided that where a taxpayer agreed to extend such period beyond the ten-year period contained in section 6502(a) of the Internal Revenue Code of 1986, the extension would expire on the latest of: the last day of the ten-year period; December 31, 2002; or the 90th day after the end of the period of an extension in the case of an extension in connection with an installment agreement. See Reform Act at § 3461(c)(2), 112 Stat. 685, 764. Because here the first offer was presented before December 31, 1999, and the last day of the ten-year period was June 22, 1999, the effect of the Reform Act was to extend the November 29, 2002 deadline previously computed to December 31, 2002, the "latest" of the three possible dates set forth in the Reform Act, section 3461(c)(2). See, e.g., United States v. Elton, 429 F. Supp. 2d 561, 574-75 (E.D.N.Y. 2006) (applying Reform Act).

Analysis of the relevant events and relevant statutes for tolling purposes does not end here, however. On June 14, 2000, also after the effect of the Reform

Act, Mr. Ryals submitted his second offer in compromise.  This offer remained pending until March 12, 2002, when it was rejected.  Several additional statutory provisions govern the effect this second offer had on the expiration of the statute of limitations.

Another change in the Reform Act, which operates to suspend the statute of limitations on collection while an offer in compromise (made on or *after* December 31, 1999) is pending, is the addition of section 6331(k).  Under 26 U.S.C. § 6331(k), which was added by Pub. L. No. 105-206, § 3462(b), 112 Stat. 685, 765-66, the IRS is prohibited from making a levy on property or the rights to property of a person with respect to an unpaid tax while an offer in compromise by such person is pending, or if the offer is rejected, during the 30 days thereafter.[4] An offer in compromise is pending beginning on the date the Secretary accepts the offer for processing.  Id.   Pursuant to section 6331(i)(5), the period of limitations is suspended while the IRS is prohibited from making a levy, and section 6331(k)(3) provides that rules similar to section 6331(i)(5) apply.  Because Mr. Ryals' second offer was accepted for processing on June 14, 2000, section 6331(k) applied to suspend the statute of limitations from June 14, 2000 to April 12, 2002.

---

[4] If an appeal of the rejection is filed within 30 days, the IRS cannot levy property while the appeal is pending.  26 U.S.C. § 6331(k)(1)(B).

Later statutory enactments also apply to the determination of how this second offer in compromise served to extend the statute of limitations. These are The Community Renewal Tax Relief Act of 2000 ("Renewal Act"), Pub. L. No. 106-554, 114 Stat. 2763 (2000); and the Job Creation and Worker Assistance Act of 2002 ("Worker Assistance Act"), Pub. L. No. 107-147, § 416(e)(1), 116 Stat. 21, 55 (2002). Effective December 21, 2000, the Renewal Act eliminated the statutory suspension of the limitations period.[5] Therefore, the second offer suspended the limitations period only from June 14, 2000 through December 20, 2000, the effective date of the Renewal Act. The Worker Assistance Act, effective on March 9, 2002, reinstated the statutory suspension,[6] thereby tolling the limitations period until March 12, 2002, the date the IRS rejected the second offer.

Thus, a total of six months and nine days of suspension, (i.e., from June 14, 2000 to December 20, 2000, plus three days from March 9, 2002 to March 12, 2002), are added to the suspension period derived by operation of the first offer in compromise. Each of the statutory amendments discussed applies to the second offer, and section 6502(a)(2) of the Reform Act applies to the first offer, because

---

[5] The Renewal Act eliminated the suspension provision contained in the 1998 Reform Act by amending section 6331(k)(3) to delete a cross-reference to subsection (5) of section 6331(i), effective December 21, 2000.

[6] The Worker Assistance Act reinstated the statutory suspension by restoring the cross-reference to subsection (5) in section 6331(i), effective March 9, 2002.

12

the Forms 656 that Mr. Ryals executed specifically reference any statutory periods of limitation, and the statutes at issue were each enacted before expiration of the limitations period(s) agreed upon. See Foutz v. United States, 72 F.3d 802, 806 (10th Cir. 1995) ("[T]he Form 900 that taxpayer signed . . . expressly referenced extending the 'statutory period.'. . . Treating the waiver not as a contract but as an extension of the statute of limitations, the 1990 amendments were made before the time for collection had expired."). Because the first offer served to toll or suspend the statutory limitations period until December 31, 2002, and adding six months and nine days to that date extends the period until July 9, 2003, the suit was timely filed on May 20, 2003.

Mr. Ryals raises two principal arguments in support of his position that the suit is not timely. The first is that the Reform Act had absolutely no effect on the original tax collection statute of limitations expiration date, and thus did not extend the suspension period of the first offer in compromise from November 29, 2002[7] to December 31, 2002. This argument is premised on Mr. Ryals attempting to discern congressional intent in first limiting (Reform Act), and then eliminating (Renewal Act), and then reinstating (Worker Assistance Act), the tolling or

_____

[7] Mr. Ryals maintains the date is November 28, 2002 rather than November 29, 2002. The one-day difference is immaterial.

13

suspension associated with offers in compromise in the various statutes discussed above. The argument, Mr. Ryals insists, finds support in regulations promulgated during the relevant time period, and even in the initial position the Government expressed in its motion for summary judgment.

The second argument is that because the IRS did not suspend its collection activities while the second offer in compromise was pending, the collection statute of limitations was not suspended. This argument is premised on the language of the applicable statute and regulation.

Addressing Mr. Ryals' first argument, the lower court correctly discerned the effect of the Reform Act on the first offer in compromise, because it applied the clear words used in the statute. The Reform Act certainly limited the Government's ability to contractually extend the statute of limitations. However, as to requests to extend the period of limitation made before December 31, 1999, as this one was, that remained pending on December 31, 1999, a sunset provision stated that the statute of limitations expires "on the *latest* of  – (A) the last day of the 10-year period; (B) December 31, 2002; or (C) in the case of an extension in connection with an installment agreement, the 90th day after the end of the period of such extension." See Reform Act, § 3461(c)(2), 112 Stat. 685, 764 (1998) (emphasis added). This express statutory language applied to the first offer in

14

compromise.  Whether or not such a construction is at odds with temporary regulations issued,[8] congressional intent, or the initial position of the Government as stated in its motion for summary judgment[9] is irrelevant because the clear words of the statute command this result.  See United States v. Orozco, 160 F.3d 1309, 1313 (11th Cir. 1998) (where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms")  (citations omitted).

Mr. Ryals' second argument is that the statute of limitations on the IRS' collection suit should not be considered suspended during the pendency of his second offer in compromise (from June 14, 2000 to March 12, 2002), because the IRS continued collection activities during that period of time in violation of the relevant statute.  In 1991, the IRS issued a wage levy[10] to Mr. Ryals' employer,

---

[8] Mr. Ryals cites to Proposed Regulation § 301.6502-1 (March 4, 2005) to support his argument that December 31, 2002 is not the deadline under the Reform Act, because that would be contrary to the intent behind the legislative change, as presumably recognized by the IRS with its proposed regulation.  Proposed regulations, however, are merely suggestions for comment and have no legal effect.  See LeCroy Research Sys. Corp. v. Comm'r, 751 F.2d 123, 127 (2d Cir. 1984); Prop. Treas. Reg. § 301.6502-1(g) (section not applicable until the date final regulations are published in Federal Register).

[9] The motion for summary judgment argued that the first offer served to extend the statute of limitations to November 29, 2002, the period that the offer remained pending plus one year. In a supplemental brief in support of the motion, and filed pursuant to a court order directing the parties to address certain questions, the Government argued that literal application of the statute required the court to find that the statute was extended to December 31, 2002, which is what the lower court found.

[10] Under 26 U.S.C. § 6331(e), "[t]he effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343."

and bi-weekly payments from his employer have been sent to the IRS since that time. The wage levy issued by the IRS in 1991 continued in effect throughout the pendency of Mr. Ryals' second offer in compromise.

Mr. Ryals' argument that the statute of limitations should not be considered suspended during the pendency of his second offer in compromise is based on the interplay between two provisions of 26 U.S.C. § 6331. The first one, contained in section 6331(k)(1)(A), provides that: "No levy may be made . . . on the property . . . of any person with respect to any unpaid tax — during the period that an offer-in-compromise by such person . . . is pending with the Secretary." The second one, contained in section 6331(i)(5),[11] provides that: "The period of limitations under section 6502 shall be suspended for the period during which the Secretary is prohibited . . . from making a levy." Relying on these two provisions, Mr. Ryals argues that, to the extent the IRS continued to levy on his property (his bi-weekly paychecks) during the pendency of his second offer in compromise, the IRS acted contrary to section 6331(k)(1)(A) and should not be permitted to benefit by having the statute of limitations on its collection suit suspended during that period. In effect, Mr. Ryals asks us to remedy the IRS' alleged violation of the statute by

---

[11] Section 6331(i)(5) applies by its terms to the prohibition on levies made during the pendency of certain refund actions. But it also applies, by cross-reference, to the prohibition on levies made during the pendency of offers in compromise. See 26 U.S.C. § 6331(k)(3)(B).

16

treating the statute of limitations on the collection suit as having run throughout the pendency of the second offer in compromise.

The Government acknowledges that the IRS is generally prohibited from making new levies during the pendency of an offer in compromise, but argues that this prohibition does not affect continuous, one-time levies (like the wage levy challenged by Mr. Ryals) first made before the offer in compromise became pending. The Government thus argues that the IRS did not violate section 6331(k)(1)(A) when it left in place the pre-existing levy on Mr. Ryals' wages and that, in any event, there is no indication that Congress intended a violation of section 6331(k)(1)(A) to be remedied by running the statute of limitations on the IRS' collection suit. Because the statutory text supports the Government's position that the IRS did not violate section 6331(k)(1)(A), we reject Mr. Ryals' argument to the contrary and have no occasion to decide what remedy is appropriate where such a violation has occurred.

For purposes of construing section 6331(k)(1)(A)'s general prohibition on levies made during the pendency of an offer in compromise, Congress has directed us to apply "[r]ules similar to the rules of . . . paragraph[] (3) . . . of subsection (i)." 26 U.S.C. § 6331(k)(3)(A). The cross-referenced provision— section 6331(i)(3)—in turn contains a "rule" that states: "This subsection *[subsection*

17

*(i)(1), which generally prohibits levies from being made during the pendency of certain refund proceedings]* shall not apply to . . . any levy which was first made before the date that the applicable proceeding under this subsection commenced." 26 U.S.C. § 6331(i)(3)(B)(ii). By analogy, then, a rule "similar to" the rule contained in section 6331(i)(3)(B)(ii) would state: "This subsection *[subsection (k)(1)(A), which generally prohibits levies from being made during the pendency of an offer-in-compromise]* shall not apply to . . . any levy which was first made before the date that the offer in compromise became pending." The upshot of the rule Congress has told us to apply in situations like this is that the IRS is not prohibited from levying on a taxpayer's property during the pendency of the taxpayer's offer in compromise, so long as the levy was "first made" before the date on which the offer in compromise became pending. Applying that rule to this case, we conclude that the IRS did not violate the general prohibition on levy set forth in section 6331(k)(1)(A). We therefore reject Mr. Ryals' claim to the contrary and hold that the statute of limitations was properly suspended during the pendency of his second offer in compromise.

B. <u>The Refund Suit: The IRS May Levy Tenancy by the Entirety Property</u>

The remaining issue concerns the lower court's dismissal of counts one through eight of the counterclaim and grant of summary judgment for the

Government as to counts nine and ten of the counterclaim. We need not address whether the lower court was correct in its determination that it lacked subject matter jurisdiction over the first eight counts of the counterclaim upon determining that Mr. Ryals improperly filed the refund claims for the years 1992 through 1999. See e.g., Gustin v. United States, 876 F.2d 485, 489 (5th Cir. 1989) ("Gustin did not file a valid informal claim for his third quarter taxes. The district court had no jurisdiction to consider Gustin's claim for a refund. . . ."). Assuming Mr. Ryals' informal claims for the 1992 through 1999 tax years were sufficient, and considering the tax years of 2000 and 2001 raised in counts nine and ten of the counterclaim, we address the taxpayer's argument that the dividend income he and his wife received as tenants by the entirety was improperly construed as wages, salary or other income under 26 U.S.C. § 6334(d).

To be entitled to a refund of taxes, a taxpayer must show that the amount he paid to the IRS "exceed[s] the amount which might have been properly assessed and demanded." Lewis v. Reynolds, 284 U.S. 281, 283 (1932). "[T]he established law [is] that refunds are due only for overpayment of taxes." Cindy's Inc. v. United States, 740 F.2d 851, 854 (11th Cir. 1984) (citing 26 U.S.C. § 6402(a)). Mr. Ryals does not claim that he paid any taxes in excess of the amount(s) properly due or that he does not owe the taxes on which the levy was based.

19

Rather, the claim is that the IRS' levy was illegal because the dividend income Mr. Ryals and his wife received as tenants by the entirety was improperly construed as constituting wages, salary or other income under section 6334(d).

A levy is a "summary, non-judicial process, a method of self-help authorized by statute which provides the Commissioner with a prompt and convenient method for satisfying delinquent tax claims." United States v. Sullivan, 333 F.2d 100, 116 (3d Cir. 1964) (citations omitted). The power to levy "is designed to enable the government 'promptly to secure its revenues' while competing claims are resolved." United States v. Ruff, 99 F.3d 1559, 1563 (11th Cir. 1996) (quoting United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985)). Section 6334 provides that certain property is exempt from levy, and subsection 6334(d) exempts from levy an amount of the taxpayer's wages, salary or other income.

At issue for the tax years covered by the counterclaim are annual distributions of dividends Mr. Ryals received. Where a taxpayer has multiple sources of wages, salary or other income, the IRS may elect to levy on one or more of those sources while leaving other sources free from levy. Treas. Reg. § 301.6334-2(c)(1). Where the wages, salary or other income left free from levy equal or exceed the amount that qualifies for exemption from levy, the IRS "may

treat no amount of the taxpayer's wages, salary, or other income" on which it elects to levy as exempt.  Id.  Mr. Ryals maintains that the dividend income he and his wife received during the years in question should be disregarded in determining whether or not he had "other income."  He insists that because the dividend income was received as tenants by the entirety property, it does not qualify as "other income" under the regulation.

Admittedly, Florida law recognizes that property held by husband and wife as tenants by the entirety is not subject to execution to satisfy the debts of one spouse.  See Winters v. Parks, 91 So.2d 649,651 (Fla. 1956).  However, "the IRS's federal statutory powers to tax and attach liens to property trump[s] any state property rights afforded to a taxpayer who holds property by the entireties with her spouse."  In re Sinnreich, 391 F.3d 1295, 1297-98 (11th Cir. 2004) (discussing and limiting United States v. Craft, 535 U.S. 274 (2002), to the "unique powers granted to the IRS under federal law . . . to divide the property rights of tenancy by the entireties property").  Because Mr. Ryals had income from sources other than the source levied upon, and the income from those sources exceeded the statutory exemption amount, he was not entitled to any exemption from levy for any amount of his wages.

IV.  CONCLUSION

21

Finding no error in the lower court's grant of summary judgment in favor of the Government on the suit seeking to reduce tax assessment to judgment, or dismissal and summary judgment on the counterclaim for tax refunds, we accordingly AFFIRM.