08-3017-cv
United States v. Moskowitz, Passman & Edelman

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: March 9, 2010          Decided: April 29, 2010)

Docket No. 08-3017-cv

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

- v.-

MOSKOWITZ, PASSMAN & EDELMAN,

*Defendant-Appellant.*

_____

Before:  LEVAL, SACK, and WESLEY, *Circuit Judges*.

Appeal from an October 10, 2007 order of the United States District Court for the Southern District of New York (Owen, J.).  The district court found that the appellant law firm unlawfully failed to honor two tax levies served on it by the IRS relating to unpaid taxes owed by the firm's managing partner.  We hold that the firm was obligated by the IRS's continuing levy on the partner's "salary," 26 U.S.C. § 6331(e), to surrender to the government the funds that it instead paid to the partner as "draws."

AFFIRMED.

_____

MATTHEW L. SCHWARTZ, Assistant United States Attorney (David S. Jones, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern

District of New York, New York, New York, *for Appellee.*

JAMES J. MAHON, Lally Mahon & Rooney, LLP, New York, New York, *for Appellant.*

---

WESLEY, *Circuit Judge*:

In this appeal, the appellant law firm, Moskowitz, Passman & Edelman ("MPE" or the "firm"), argues that its managing partner's "draws" — that is, advances on profit distributions to which he was entitled pursuant to the firm's partnership agreement — were not "salary or wages" under § 6331(e) of the Internal Revenue Code. MPE proffers this contention in defense of its failure to comply with two administrative levies served on it by the Internal Revenue Service (the "IRS" or the "government"), relating to the personal income tax liability of the firm's managing partner.

The district court rejected this contention and imposed a statutory fine for the firm's non-compliance with the levies. We, too, are unpersuaded by the firm's bold attempt to evade the levies. Therefore, we affirm and hold that the § 6331(e) levy was sufficient to reach the partner's draws from MPE's profits.

## I. BACKGROUND

The facts are undisputed and straightforward. The levies at issue relate to the personal income tax liability of A. Sheldon Edelman, the managing partner of MPE, which is a law firm organized as a partnership under New York law. Pursuant to MPE's oral partnership agreement, Edelman was entitled to 60% of the firm's profits and Jeffrey Motelson, the firm's other partner, was entitled to 40%. (Edelman Dep. 27:3-6.) Edelman "handled the checkbook" for the firm, and wrote MPE checks to himself and to Motelson on an almost-weekly basis. (*Id.* 52:4-9, 76:23-24.) He characterized these payments as "draw[s]" or "advances" taken "against whatever the [firm's] profits were going to be . . . at the end of the year." (*Id.* 52:12-14.)[1]

Beginning in 1996, the IRS sought to collect Edelman's unpaid taxes from 1990-1994 by serving administrative levies on MPE.[2] First, on March 1, 1996, the IRS served MPE with a

---

[1] Edelman also caused MPE to write checks to the IRS and the New York State Department of Taxation and Finance, which he used to resolve other aspects of his income tax liability not at issue in this case. Edelman viewed these payments as "part of [his] draw" from the firm. (Edelman Dep. 75:5.)

[2] In January 2004, in a separate action in the United States District Court for the District of Connecticut, Edelman stipulated to the entry of a $1,224,157.74 judgment relating to unpaid taxes during the years 1990-1994, 1996, and 1998-

3

Form 668-W(c) "Notice of Levy on Wages, Salary, and Other Income" (the "Salary Levy"). The Salary Levy listed Edelman as the relevant taxpayer and indicated that he owed $429,071.02 in unpaid taxes, penalties, and interest for the years 1990-1994. It also stated:

> This levy requires you [MPE] to turn over to us: (1) [Edelman's] wages and salary that have been earned but not paid yet, as well as wages and salary earned in the future until this levy is released, and (2) [Edelman's] other income that you have now or for which you are obligated.

MPE did not turn over any funds in response to the Salary Levy.

On May 2, 1996, the IRS sent the firm a Form 668-C "Final Demand" letter relating to the Salary Levy. The letter stated that "[d]emand is again made for the amount of $429,071.02, shown in the [Salary Levy], or for any smaller sum you may have owed the taxpayer at the time the [Salary Levy] was served." The letter also warned that, if MPE did not comply with the demand within five days of its service, then the IRS would "consider it [MPE's] final refusal and may then start proceedings under [Internal Revenue] Code

2001. (Stipulation for Judgment, *United States v. Edelman*, No. 03 Civ. 240 (PCD) (D. Conn. Jan. 16, 2004).) The complaint in this action relates only to Edelman's tax liability between 1990 and 1994.

4

section 6332."

When MPE did not respond to the demand letter, the IRS sent the firm a second Notice of Levy on April 8, 1997, this time on Form 668-A(c) (the "Property Levy"). Like the Salary Levy, the Property Levy related to Edelman's tax liability for the years 1990-1994. Based on the lapse of time between the first and second levy, the Notice indicated that Edelman owed $472,026.09 in back taxes, penalties, and interest. It directed MPE to turn over to the IRS "[Edelman's] property and rights to property (such as money, credits, and bank deposits) that you [MPE] have or which you are already obligated to pay [Edelman]." MPE did not respond to the Property Levy, and the IRS sent the firm a second "Final Demand" letter on June 4, 1997. This letter contained language substantially similar to that in the May 2, 1996 demand letter but called for the more recently calculated figure of $472,026.09. MPE did not respond to the second demand letter.

On May 22, 2000, the government commenced this action to enforce both levies pursuant to 26 U.S.C. § 6332(d). Following discovery, the parties cross-moved for summary judgment and the district court ruled in favor of the

government. *See United States v. Moskowitz, Passman & Edelman*, No. 00 Civ. 3832, 2007 WL 2962556 (S.D.N.Y. Oct. 10, 2007). It held that "calling [the payment] a draw or an advance instead of . . . salary is insufficient to except it from the levies' ambit." *Id.* at *2 (citing *United States v. Jefferson-Pilot Life Ins. Co.*, 49 F.3d 1020, 1022 (4th Cir. 1995) and *United States v. Has, Inc.*, No. 87 Civ. 1644, 1990 WL 54826, at *2 (D.P.R. Feb. 21, 1990)). The court reasoned that, "[k]eeping in mind the spirit of the law, the fact that monies are paid out to the partners frequently weekly as advances on future income cannot exempt the law firm from the statute by virtue of Edelman's partner status." *Id.* The court also found that MPE had not demonstrated "reasonable cause" for its failure to comply with the levies, and assessed an additional statutory penalty pursuant to 26 U.S.C. § 6332(d)(2). *See* 2007 WL 2962556, at *2.

## II. DISCUSSION

We review *de novo* the legal conclusions relied on by the district court to grant summary judgment. *E.g., N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 559 F.3d 102, 114 (2d Cir. 2010). MPE's principal argument in this

6

appeal is that the district court erred by holding that Edelman's partnership draws were "salary or wages" under § 6331(e).  We accept MPE's invitation to resolve the appeal on this basis, and reject its lone contention.[3]  For the reasons set forth below, we hold that the Salary Levy, served pursuant to § 6331(e), was sufficient to reach Edelman's draws from MPE because the checks that he wrote to himself were periodic payments that compensated him for his services to the firm.  Therefore, we affirm.

**A.    Federal Tax Liens and Administrative Levies by the IRS**

When an individual such as Edelman fails to pay his income taxes after a demand from the IRS, a statutory lien in the amount of the deficiency arises on "all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  The lien remains in effect until the deficiency is either satisfied or "becomes unenforceable by reason of lapse of time."  *Id.* § 6322.  As exemplified by Edelman's failure to pay his back taxes, however, a federal tax lien is "not self-executing."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985).

---

[3] Because we reject MPE's argument and affirm as to the Salary Levy based on 26 U.S.C. § 6331(e), we do not address the Property Levy that was served on MPE pursuant to 26 U.S.C. § 6331(a)-(b).

Nevertheless, the IRS is not without a sword to wield when a taxpayer fails to honor his or her income tax obligations. Congress has armed the agency with at least two statutory mechanisms for collecting unpaid income taxes: (1) lien-foreclosure suits, *see* 26 U.S.C. § 7403;[4] and (2) administrative levies, *see id.* §§ 6331-6332. Only the latter option is relevant here.

The administrative levy tool is a "summary, non-judicial process, a method of self-help authorized by statute which provides the [IRS] with a prompt and convenient method for satisfying delinquent tax claims." *United States v. Sullivan*, 333 F.2d 100, 116 (3d Cir. 1964). "The power to levy '[was] designed to enable the government promptly to secure its revenues while competing claims are resolved.'" *United States v. Ryals*, 480 F.3d 1101, 1110 (11th Cir. 2007) (quoting *United States v. Ruff*, 99 F.3d 1559, 1563 (11th Cir. 1996)). The procedure allows the

---

[4] Pursuant to § 7403, "[i]n any case where there has been a refusal or neglect to pay any tax," the government may commence a civil action in federal court "to enforce the lien of the United States . . . with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a).

8

government to collect on a tax lien by levying "upon all property and rights to property" of the deficient taxpayer, even if in the hands of third parties, "whether real or personal, tangible or intangible." 26 U.S.C. § 6331(a), (b). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945); *see also Drye v. United States*, 528 U.S. 49, 56 (1999).

An administrative levy typically extends only to "property possessed" and "obligations existing" at the time the levy is served. 26 U.S.C. § 6331(b). The Property Levy fit within this category. According to Treasury regulations, "obligations exist" with respect to such a levy "when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date." 26 C.F.R. § 301.6331-1(a)(1). Thus, subject to certain exceptions, *e.g.*, 26 U.S.C. § 6331(e), (h), a one-time levy does not usually reach property acquired after the date on which it is served. *See United States v. Hemmen*, 51 F.3d 883, 887 (9th Cir. 1995).

One of the exceptions to this rule, which the IRS relied on when it served the Salary Levy, is a continuing

9

levy pursuant to § 6331(e). Section 6331(e) was added to the tax code as part of the Tax Reform Act of 1976, Pub. L. 94-455, § 1209, 90 Stat. 1709, in order to alleviate the administrative burdens on the IRS that arose out of requiring the agency "to make successive levies in cases involving salaries and wages." *Meehan v. Comm'r*, 122 T.C. 396, 401 n.13 (2004). The statute provides that "[t]he effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released." 26 U.S.C. § 6331(e).

**B.  The § 6332(d) Action to Enforce the Administrative Levies**

After MPE failed to respond to either of the IRS's "Final Demand" letters, the government commenced this action pursuant to § 6332(d). In such an action, the defendant may be held personally liable "in a sum equal to the value of the property or rights" that it failed to surrender, up to the amount of the underlying tax deficiency. 26 U.S.C. § 6332(d)(1). The court may also impose a 50% penalty if it finds that the defendant ignored the levies "without reasonable cause." *Id.* § 6332(d)(2).

The defenses available in a § 6332(d) action are

10

limited.  "[T]he validity of the levy and competing claims to the ownership of the funds are not valid reasons for refusing to honor a levy."  *United States v. Daccarett*, 6 F.3d 37, 59 (2d Cir. 1993).  Non-possession of the taxpayer's property, however, is a defense available in such an action, *see United States v. Sterling Nat'l Bank & Trust Co.*, 494 F.2d 919, 921 (2d Cir. 1974), and MPE appears to rely on this defense to argue that Edelman's draws were not the sort of "property or rights to property" subject to a § 6331(e) levy on salary or wages.  Although we are the first federal court of appeals to address the application of § 6331(e) in this context, we readily reject MPE's contention.

For practical purposes, the objects of our inquiry are profits that were in the possession of MPE when it was served with the Salary Levy and — because we are examining the effect of a continuing levy under § 6331(e) — profits that came into the firm's possession after it received the levy.  With respect to these funds, the Internal Revenue Code "'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'"  *United States v. Craft*, 535 U.S. 274, 278 (2002) (quoting *United States v. Bess*, 357 U.S. 51, 55

(1958)); *see also* Rev. Rul. 75-554, 1975-2 C.B. 478 (citing *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960)).  We must therefore "look initially to state law to determine what rights the taxpayer has in the property the [g]overnment seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."  *Drye*, 528 U.S. at 58.

New York law guides our assessment of Edelman's rights to MPE's profits.  Absent a contrary provision in the partnership agreement, a partner's "interest in the partnership" includes his or her "share of the profits and surplus," which constitutes "personal property" of the partner in question.  N.Y. P'ship Law § 52.  The IRS "has itself recognized that a partner's interest in a partnership is generally . . . the right to a proportionate share of the distribution of partnership profits or surplus after the payment of partnership debts."  *United States v. Triangle Oil*, 277 F.3d 1251, 1256 (10th Cir. 2002) (internal quotation marks omitted); *see also* IRS, Internal Revenue Manual § 5.17.3.9.16 (Dec. 7, 2007).

12

Edelman testified at his deposition that MPE's verbal partnership agreement vested in him the individual right to 60% of the firm's profits. (*E.g.*, Edelman Dep. 27:3-6, 8-13.) He also testified that he wrote MPE checks to himself on a near-weekly basis, which he referred to as "draws" and were, in his view, akin to "advances" or "loans" taken from the firm's annual profits. (*Id.* 26:12-14.) Specifically, at the end of year, the firm's accountant calculated MPE's profits and Edelman was "charged with having taken advances or loans or draw of the equivalent of [60%] of the net earnings [during] that period of time." (*Id.* 30:9-14.) According to Edelman, he relied on the accountant's calculation each year and reported as partnership income 60% of the MPE's profits. (*Id.* 30:9-15.) In light of this testimony, MPE's partnership agreement, and New York law, we conclude that: (1) Edelman had an interest in 60% of the firm's profits; and (2) Edelman's "draws" were advances on his annual share of the firm's profits.

The district court concluded that Edelman's interest in MPE's profits constituted "property or rights to property," 26 U.S.C. §§ 6321, 6331, and MPE has not challenged that conclusion on appeal. The final question before us, then,

13

is whether these profit distributions were "salary or wages" under § 6331(e). This is not, as MPE contends, an issue of state law. Instead, it is a matter of federal statutory interpretation. The Internal Revenue Code governs the "consequences" of MPE's possession of Edelman's "property or rights to property." *Craft*, 535 U.S. at 278.

The statute does not define "salary or wages" for purposes of § 6331(e), and its legislative history "provides little illumination." *Meehan*, 122 T.C. at 401 n.13. However, a Treasury regulation titled "Continuing effect of levy on salary and wages" defines the statutory phrase "salary or wages" to "include[] *compensation for services paid in the form of fees, commissions, bonuses, and similar items*." 26 C.F.R § 301.6331-1(b)(1) (emphases added). Moreover, the regulation interprets the statute — which makes the levy effective on all "salary or wages" that become "*payable to*" the taxpayer "*continuous*[*ly*] from the date [the] levy is first made," 26 U.S.C. § 6331(e) (emphases added) — such that a continuing levy under § 6331(e) may reach "advances on salary or wages made subsequent to the date of the levy." 26 C.F.R § 301.6331-1(b)(1). The broad construction we now adopt by relying on

14

this regulation is consistent with common usage[5] and the objective of § 6331(e): "[T]o provide a means of levying upon remuneration payable to a taxpayer on a recurring basis for personal services performed for the payor." *United States v. Jefferson-Pilot Ins. Co.*, 49 F.3d 1020, 1022 (4th Cir. 1995).[6]

Applying the Treasury regulation, we conclude that the Salary Levy pursuant to § 6331(e) was sufficient to reach Edelman's draws because they were "compensation for services" that he provided to MPE. 26 C.F.R. § 301.6331-1(b)(1). Edelman acknowledged that he rendered services to

---

[5] According to the 2002 edition of *Webster's Third New International Dictionary of the English Language*, the words "wage" and "salary" both "mean the price paid someone for his [or her] labor or services," with the chief difference between the two terms being that "salary" typically connotes "fixed compensation . . . paid at longer intervals than wages and usually for services that require training or special ability." *Webster's Third New International Dictionary of the English Language* 2568 (2002).

[6] We join the other courts that have looked to this Treasury regulation when considering the reach of the continuing levy provision. *E.g.*, *Mission Primary Care Clinic, PLLC v. IRS*, 606 F. Supp. 2d 638, 645 (S.D. Miss. 2009), *aff'd in part and rev'd in part on other grounds*, 2010 WL 1141592 (5th Cir. Mar. 25, 2010) (per curiam); *Maloney v. Syvertsen*, No. 85 Civ. 1309 (MJL), 1985 WL 2037, at *2 (S.D.N.Y. July 16, 1985); *see also Jefferson-Pilot*, 49 F.3d at 1022-23 (affording *Chevron* deference to the IRS's conclusion that "salary or wages" includes "commissions").

15

MPE for which he was entitled to compensation in the form of a share of the firm's profits. This was not a unique arrangement. "[T]he most common method of compensating partners for their services to a partnership is through profit-sharing." *Buchbinder Tunick & Co. v. Tax Appeals Tribunal of the City of New York*, 100 N.Y.2d 389, 393 (N.Y. 2003). Therefore, we hold that Edelman's draws were a form of compensation for services that were "similar" to "fees, commissions, [or] bonuses." 26 C.F.R. § 301.6331-1(b)(1).

MPE contends in its brief that its payments of partnership draw to Edelman did not constitute "salary or wages" under § 6331(e) at the time of the Salary Levy because "a partner only realizes income on the last day of the partnership's taxabale year." However, the regulation cited by MPE concerns the timing of the "[r]ecognition of gain or loss to [a] partner" "[f]or the purposes of sections 731 and 705" of the Internal Revenue Code. 26 C.F.R. 1.731-1(a)(1)(ii).[7] Contrary to MPE's assertion, the time at

---

[7] The full text of the regulation provides that, "[f]or purposes of sections 731 and 705 [of the Internal Revenue Code], advances or drawings of money or property against a partner's distributive share of income [are] treated as current distributions made on the last day of the partnership taxable year with respect to such partner." 26 C.F.R. § 1.731-1(a)(1)(ii).

16

which Edelman was required to recognize a gain or loss from his draws is not dispositive of whether the checks that he wrote himself constituted "compensation for services," 26 C.F.R. § 301.6331-1(b)(1), or "salary or wages," 26 U.S.C. § 6331(e). Moreover, even if we ignored that flaw in MPE's position and equated these distinct concepts, MPE's contention is contradicted by the Treasury regulation relating to § 6331(e), which provides that a continuing levy "attaches to . . . advances on salary or wages made *subsequent to* the date of the levy." 26 C.F.R. § 301.6331-1(b)(1) (emphasis added). Therefore, the additional Treasury regulation cited by MPE did not absolve the firm of its obligation to honor the Salary Levy.

Finally, it is of no moment that the MPE checks that Edelman wrote to himself sometimes drew on funds that were generated through client representations in which he did not participate. The issue is whether the payments were "compensation for services" that Edelman provided to the firm itself, not to the firm's clients. The record establishes that Edelman, the firm's managing partner, *was* providing services to MPE on an ongoing basis. For example, Edelman practiced law on behalf of the firm. (*See* Edelman

Dep. 37:4-7.) Even distributing the firm's profits amongst its partners, which was only a portion of the duty that Edelman referred to as "hand[ling] the firm's checkbook," was a service to the firm for which Edelman was compensated by the payments at issue. (*Id.* 76:23-24.)

The bottom line is this: Edelman wrote checks from MPE to himself — usually on a weekly basis[8] — as compensation for services that he provided to the firm. The fact that these payments were characterized as "draws" means only that they were, as Edelman admitted at his deposition, "advance[s]" on compensation. (*Id.* 26:12.) A levy pursuant to § 6331(e) reaches advances on "salary or wages." *See* 26

---

[8] In a September 2008 "Chief Counsel Advisory," the IRS took the view that profits distributed to an attorney from a firm organized as a limited liability company "*may* be subject to the continuing wage levy provision of I.R.C. § 6331(e)." *See* Chief Counsel Advisory 2008-36-2002 (Sept. 5, 2008) (emphasis in original), *available at* 2008 WL 4102684. The memorandum emphasizes that the district court's decision in this case and the decision in *Jefferson-Pilot*, 49 F.3d at 1022, were "based . . . on the fact that the remuneration was paid out to the delinquent taxpayer on a recurring basis." Chief Counsel Advisory 2008-36-2002. The memorandum is correct as a factual matter — Edelman testified at his deposition that he received draws on a near-weekly basis. (Edelman Dep. 52:8-9, 54:20-21.) We also agree with the IRS that the frequency and regularity of the firm's payments to Edelman militate in favor of the conclusion that the draws were "salary or wages" under § 6331(e).

18

C.F.R. § 301.6331-1(b)(1).  Accordingly, we hold that MPE is liable for its failure to comply with the Salary Levy.

### III.  CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED.