**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ZHI YONG GUO, aka Jackson,
        *Defendant-Appellant.*

No. 09-50394

D.C. No.
2:08-cr-00461-
JFW-2

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
November 1, 2010—Pasadena, California

Filed March 17, 2011

Before: Harry Pregerson, Kenneth F. Ripple,* and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

---

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

**COUNSEL**

Fay Arfa, Fay Arfa, a Law Corporation, Los Angeles, California, for the defendant-appellant.

Christopher D. Grigg, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

A jury convicted Defendant Zhi Yong Guo of knowingly

and willfully conspiring to export, and attempting to export, ten export-controlled thermal imaging cameras without a license. We affirm because the statute of conviction is constitutional.[1]

## I.  BACKGROUND

The United States restricts the export of technologies that it deems potentially dangerous to national security. A complicated framework of statutes, executive orders, and regulations effects those restrictions. This case concerns one such export-controlled technology, namely, thermal imaging cameras.

Thermal imaging cameras convert heat energy into live video, allowing users to see the images around them at any time of day or night. Anyone who wants to take or send a thermal imaging camera of the kind restricted by United States regulations to an export-controlled country must first obtain a license from the Department of Commerce. Failure to obtain such a license subjects the offender to civil and criminal penalties under 50 U.S.C. § 1705.

Defendant worked as an engineer in Beijing, China, where he owned and operated a company devoted to developing photoelectric technologies. He is a Chinese citizen and national. In early 2004, Defendant became interested in acquiring U.S.-made thermal imaging cameras. He pursued several avenues to try to obtain the cameras but did not succeed until late 2007, when he convinced a friend to help him.

Defendant's friend and accomplice, Tai Wei Chao, is a United States citizen. At the time, Choa worked for a company that maintained offices in the United States and China.

---

[1]Defendant makes several arguments in his appeal. Here, we deal only with his argument that 50 U.S.C. § 1705 is unconstitutionally vague. We address the remaining issues in a separate memorandum disposition filed this date.

Defendant instructed Chao to purchase a certain type of export-controlled thermal imaging camera made by a company based in the United States called FLIR Systems. Neither Defendant nor Chao had a license to export the cameras. Chao enlisted the help of another friend of his, who owned and operated a printing business in San Gabriel, California. Chao placed an order for three FLIR cameras and had them shipped to California. Chao's friend then sent the cameras to China, and Defendant paid Chao a $900 commission when Chao delivered the cameras to Defendant.

Chao's order aroused the suspicions of FLIR's export compliance staff. They thought it strange that a printing company needed highly developed thermal imaging cameras. FLIR alerted the Department of Commerce to Chao's order, and agents from the Department of Commerce began to track Chao's activities.

Several months after the first shipment of FLIR cameras arrived in China, Defendant decided to travel to the United States to get more cameras. With Chao's help, Defendant obtained a visa and entered the United States. In the meantime, Chao ordered ten more FLIR cameras and had them shipped to his friend in California. Chao came to the United States, picked up the shipment of cameras from his friend, and met Defendant in Los Angeles. Defendant packed three of the cameras in his suitcase, concealing them in shoes. Chao packed the remaining seven cameras in his two bags, which he concealed in articles of clothing as well.

Five days later, Defendant and Chao went to Los Angeles International Airport, intending to fly back to China. They checked the bags and delivered them to the screening checkpoint. They proceeded through security to their gate, where federal agents intercepted and arrested them.

A grand jury indicted Defendant and Chao on charges of knowingly and willfully conspiring to export, and attempting

to export, ten export-controlled cameras to China without a license. Chao pleaded guilty and cooperated with the government. Defendant went to trial. After five days of testimony, a jury convicted Defendant of both charges. Defendant timely appeals.

## II.  DISCUSSION

Defendant challenges his conviction under 50 U.S.C. § 1705, arguing that the statute is too vague to satisfy the constitutional demands of due process. A criminal statute is void for vagueness if it is "not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006). We review de novo a vagueness challenge to the constitutionality of a statute. *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).

### A.  *The Statutory and Regulatory Scheme*

**[1]** Title 50 U.S.C. § 1705(a) makes it unlawful for "a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." Section 1705(c) provides criminal penalties for anyone who "willfully commits, willfully attempts to commit, or willfully conspires to commit . . . an unlawful act described in subsection (a) of this section."

**[2]** Two related sections within this chapter, §§ 1701 and 1702, empower the President to regulate "any transactions in foreign exchange," § 1702(a)(1)(A)(i), to deal with "any unusual and extraordinary threat . . . to the national security . . . of the United States, if the President declares a national emergency with respect to such threat," § 1701(a). By Executive Order No. 13,222, President George W. Bush declared that "the unrestricted access of foreign parties to U.S. goods and technology . . . constitute[s] an unusual and extraordinary

threat to the national security . . . of the United States." 3 C.F.R. 783, 783 (2002). The Executive Order, together with the authority allocated to the President by 50 U.S.C. §§ 1701 and 1702, authorized the continued enforcement of certain regulations previously promulgated, called the Export Administration Regulations. 15 C.F.R. pts. 730-744 (2010)

[3] The Export Administration Regulations contain two provisions that are relevant to our discussion here. First, Supplement No. 1 to Part 774, entitled the Commerce Control List, contains the list of commodities, software, and technology subject to control. Each entry on the Commerce Control List has a particular export control classification number, describes the technical characteristics of the items classified with that number, and identifies the particular reasons for controlling the export of those items. Second, Supplement No. 1 to Part 738 contains the Commerce Country Chart, which lists the restrictions relevant to each foreign country by setting out the reasons for control applicable to each country. A person can determine whether the regulations control the export of a particular item by (1) connecting the item to the relevant description in the Commerce Control List; (2) identifying the reasons for control applicable to that item; and (3) looking to see whether any of the reasons for control of that item are checked off next to the relevant country on the Commerce Country Chart.

[4] Here, for example, export control classification number 6A003.b.4.b pertains to thermal imaging cameras incorporating certain focal plane arrays, of the kind that Defendant attempted to export.[2] That classification has three reasons for

---

[2]Specifically, the regulation makes subject to export control thermal imaging cameras incorporating

> [n]on-"space-qualified" non-linear (2-dimensional) infrared "focal plane arrays" based on microbolometer material having individual elements with an unfiltered response in the wavelength range equal to or exceeding 8,000 nm but not exceeding 14,000 nm.

15 C.F.R. pt. 774, supp. 1, No. 6A002.a.3.f (incorporated by reference into No. 6A003.b.4.b).

its control: national security, regional stability, and anti-terrorism. The entry for China on the Commerce Country Chart shows restrictions for both national security and regional stability. Accordingly, the regulations required Defendant to obtain an export license before taking his thermal imaging cameras to China, and 50 U.S.C. § 1705(a) made it a crime for him *knowingly* to attempt to export the cameras without such a license.

## B. *The Vagueness Challenge*

**[5]** We recognize that putting together the pieces of this regulatory puzzle is not easy. To understand the crime with which Defendant was charged, one must look at four sources and read them together: the statute, § 1705(a); Executive Order No. 13,222; and two implementing regulations, the Commerce Control List in 15 C.F.R. Part 774 and the Commerce Country Chart in 15 C.F.R. Part 738. But a statute does not fail the vagueness test simply because it involves a complex regulatory scheme, or requires that several sources be read together, and Defendant has not directed us to a single case in which we have held otherwise. *See United States v. Kennecott Copper Corp.*, 523 F.2d 821, 824 (9th Cir. 1975) (rejecting a vagueness challenge premised on the complexity of a similar regulatory scheme and observing that the scheme was "simple as compared with some other statutory schemes carrying criminal penalties, such as the federal income tax statutes and regulations").

**[6]** Rather, the test is whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Although complicated, the Export Administration Regulations describe in detail the technologies subject to

export control. That detailed description gave Defendant clear warning that the cameras he sought to export fell within the licensing requirement of the export regulations. Those regulations also provide law enforcement with clear guidance as to what technologies they may police. Because the regulations apprise those who take the time and effort to consult them as to what may and may not be taken to other countries without a license and do not allow for arbitrary enforcement, the regulations satisfy due process.

**[7]** Moreover, the scienter requirement in § 1705(c) further alleviates any concern over the complexity of the regulatory scheme. To convict Defendant of willfully violating § 1705(a), the government was required to prove beyond a reasonable doubt that Defendant *knew* that a license was required for the export of the particular thermal imaging camera he was dealing with, and that Defendant intended to violate the law by exporting or attempting to export such a thermal imaging camera to China without such a license. The requirement that § 1705(c) places on the government to prove Defendant's knowledge of the law " 'mitigate[s] a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.' " *Jae Gab Kim*, 449 F.3d at 943 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)); *see also United States v. Quinn*, 401 F. Supp. 2d 80, 100-01 (D.D.C. 2005) (rejecting a vagueness challenge to the export administration regulations because "ignorance of the law *is* a defense" and, therefore, "concerns about defendants being convicted under a law that they could not have reasonably understood are alleviated").

## III. CONCLUSION

**[8]** Statutes and regulations are often complex, and necessarily so. But complexity is not the same as vagueness. The export administration regulations describe in great detail the technologies for which the government requires a license for

export. And, to convict anyone under 50 U.S.C. § 1705, the government must prove beyond a reasonable doubt that the person *knew* that he needed a license but did not get one. We therefore see no danger that a person could violate 50 U.S.C. § 1705 unwittingly, and we reject Defendant's vagueness challenge.

AFFIRMED.