**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | No. 14-10170 |
| v. | D.C. No. 2:09-cr-00008-LKK-1 |
| DONALD M. WANLAND, JR., *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted June 15, 2016
San Francisco, California

Filed July 27, 2016

Before: J. Clifford Wallace, Mary M. Schroeder,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court in all respects in a case in which the defendant was convicted of tax related charges, including tax evasion.

The panel held that neither the district court nor the jury erred in concluding that the defendant's monthly income from his law practice qualified as "salary or wages" under 26 U.S.C. § 6331(e), and therefore rejected the defendant's contention that the government could not prove concealment of property subject to a levy, as required for conviction under 26 U.S.C. § 7206(4).

Rejecting the defendant's contention that the district court erred in dismissing the levy counts because they exceeded the three-year statute of limitations, the panel held that the six-year statute of limitations of 26 U.S.C. § 6531(1), covering tax offenses "involving the defrauding or attempting to defraud" the government, applies to prosecutions under § 7206(4).

The panel held that the district court properly rejected the defendant's argument that res judicata precludes the government from pursuing a criminal action concerning his debts that were already discharged in bankruptcy. The panel held res judicata cannot apply because the IRS in a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

bankruptcy action and the United States government in a criminal action are not in privity.

The panel resolved several of the defendant's arguments in a concurrently-filed memorandum disposition.

## COUNSEL

John R. Hurley (argued) and Eduardo G. Roy, Prometheus Partners LLP, San Francisco, California, for Defendant-Appellant.

Christopher Hales (argued) and Matthew D. Segal, Assistant United States Attorneys; Camil A. Skipper, Appellate Chief; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

Defendant Donald Wanland, Jr. appeals from his jury convictions and sentence for tax related charges, including tax evasion. Although Wanland raises many arguments challenging his convictions and sentence, none has merit, so we affirm the district court in all respects.[1]

---

[1] We resolve several of Wanland's arguments in a concurrently-filed memorandum disposition.

## I.   Factual Background

Wanland was a successful civil attorney in Sacramento, California, and his law practice generated considerable income. In the 1990s, he entered into two partnership agreements with Richard Bernstein—the Law Offices of Wanland and Bernstein (from which Wanland drew his income) and 705 University Partners (which held the real estate at 705 University Avenue, the partnership's law office). Wanland received 75% of the profits, while Bernstein received 25% of the profits, in scheduled monthly draws. More specifically, partners were entitled to "withdraw from the partnership funds in equal monthly installments an amount equal to four-fifths of his distributive share of partnership net profits for the preceding year." 705 University Partners had its own bank account ("705 Account"), which Wanland used as both his business and personal account.[2]

Wanland's disputes with the Internal Revenue Service ("IRS") began in the 1990s, and they continued into the new millennium. For tax years 2000–2003, Wanland filed personal tax returns reporting many hundreds of thousands of dollars of income, and owing around $450,000 in taxes. Wanland never paid these taxes, and then stopped filing personal tax returns altogether. His law partnership continued to file returns showing income of around $300,000 each year.

---

[2] Throughout the relevant time period, 705 University Partners had several different bank account numbers. We refer to them jointly as the "705 Account."

After several failed attempts to resolve his tax deficiencies, an IRS Officer was assigned to Wanland's case. Following some initial correspondence, the officer sent a Collection Information Statement (IRS Form 433A) to Wanland's personal accountant to complete. Form 433A discloses an individual's income, expenses, assets, accounts, and liabilities so the IRS can assess an individual's ability to pay outstanding taxes.

In November 2003, Wanland completed, signed, and submitted the Form 433A. He listed only one bank account with a balance of $9. He did not list the 705 Account, even though, in the previous month alone, he had deposited $35,000 from his law practice into and spent over $18,000 from the 705 Account. He also did not list his American Express card, even though he had used roughly $15,000 from the 705 Account in October and November to pay down its balance. He also never disclosed the 705 Account to his accountants, who would have told Wanland that he needed to disclose it on the Form 433A.

In April 2004, the IRS reassigned Wanland's case to a different IRS Officer, who concluded that Wanland had the ability to pay his tax liabilities, penalties, and interest. In May 2004, she met with Wanland and his accountant, and Wanland promised to pay $10,000 per month towards his outstanding tax balance, and to get a loan to obtain more funds. He never got the loan, and stopped making payments after four months.

In April 2005, Wanland provided an updated Form 433A, which reported the same account as the previous Form 433A, this time with an account balance of "minimal/unknown." He again omitted the 705 Account, even though he had deposited

$20,000 into it just a few days earlier. The IRS Officer, suspicious that Wanland had been hiding accounts, issued a summons to Wanland's bank around the same time. She then learned about the 705 Account, and issued levies on both partnerships—the Law Offices of Wanland and Bernstein and 705 University Partners. The levies stated:

> This levy requires you to turn over to us: this taxpayer's wages and salary that have been earned but not paid, as well as wages and salary earned in the future until this levy is released, and (2) this taxpayer's other income that you have now or for which you are obligated.

The levies gave notice that "[w]ages and salary include fees, commissions, and bonuses." A levy served on wages and salary is "continuous from the date such levy is first made until such levy is released" by the IRS, and therefore covers property acquired after the date on which it was served. 26 U.S.C. § 6331(e).

Prior to the levies being served, Wanland's law partner Bernstein wrote Wanland checks to the 705 Account on Wanland's request. After the levies were served, Bernstein refused to write any more checks for Wanland's partnership draws, and shortly thereafter left the partnership. Wanland then wrote checks to himself from the 705 Account. Donald Spaulding then joined the partnership, assumed Bernstein's check writing responsibilities, and wrote checks to Wanland at the 705 Account when asked to do so. Wanland never told Spaulding about the levies, and Spaulding would not have written the checks had he known about the levies.

By now, the amount of unpaid taxes, penalties, and interest exceeded $900,000. Although he only disclosed one account with $9 or a "minimal/unknown" amount, from 2000 through 2006 Wanland deposited $1.95 million into the 705 Account ($1.8 million from the law partnership), and spent $1.92 million from that account. This included spending on trips to Hawaii, Lake Tahoe resorts and casinos, and Las Vegas casinos. Additionally, Wanland used about $422,000 to pay off the undisclosed American Express card (which included spa and tanning charges, clothing purchases, and other non-business related expenses).

## II.  Procedural History

### A.  The Indictments and Pretrial Litigation

A 2009 indictment charged Wanland with tax evasion (26 U.S.C. § 7201). A January 2012 superseding indictment charged Wanland with tax evasion, numerous counts of concealment of property subject to a levy (26 U.S.C. § 7206(4)), and several counts of willful failure to file a tax return (26 U.S.C. § 7203). The superseding indictment alleged that Wanland committed tax evasion by: (1) concealing the nature and extent of his assets; (2) making false statements about his income and ability to pay his taxes; (3) placing funds and property in the name of a nominee; (4) defying a tax levy; and (5) paying creditors other than the United States. As for the levy counts, the superseding indictment tied each count to a particular transaction, including checks, debit card purchases, and cash withdrawals.

### 1.  Motions to Dismiss the Levy Counts

Wanland moved to dismiss the levy counts, arguing that under 26 U.S.C. § 6331(e), continuous levies are only authorized for "salary or wages," and his partnership draws did not qualify as such.  Therefore, the government could not prove that Wanland's partnership profits were "property upon which levy is authorized," as section 7206(4) requires.  The district court concluded that the question ultimately was a factual dispute, and reserved it for trial.  Wanland renewed this argument when he moved for a judgment of acquittal on the levy counts under Federal Rule of Criminal Procedure 29(a), which the district court again denied.

Wanland also moved to dismiss the levy counts on statute of limitations grounds, arguing that the limit for these counts was three years, not six.  The district court rejected that motion.  It reviewed the language of 26 U.S.C. § 6531 (which governs the statute of limitations for tax crimes) to conclude that the six-year statute of limitations described in section 6531(1) applied to the levy counts, because it applies to "all offenses where fraud is an essential element."  Section 7206(4), titled "Removal or concealment with intent to defraud," fell "under the umbrella of § 6531(1)."

### 2.  Motion to Dismiss for Res Judicata

Wanland filed for bankruptcy in 2007, and listed the IRS as his biggest creditor.  The IRS eventually received limited proceeds from the liquidation of Wanland's assets.  In June 2011, Wanland obtained his discharge under 11 U.S.C. § 727.  The attached "Explanation Of Bankruptcy Discharge In A Chapter 7 Case," however, stated that "[d]ebts for most

taxes" are one of the "common types of debts" that are "*not* discharged."

After the return of the superseding indictment, Wanland moved to dismiss the charges on res judicata grounds. He argued that "because the Government failed to raise the claims in the indictment during the bankruptcy proceeding to prevent nondischargeability, and failed to stay the bankruptcy proceedings pending the outcome of the current criminal matter," res judicata prevented the government from "pursuing a criminal action concerning the assets and tax liabilities the bankruptcy court already discharged." The district court rejected that argument, explaining that res judicata "does not apply where the claim in question could not have been brought in the prior proceeding due to limitations on the prior court's jurisdiction."

## B. Trial

At trial, Wanland raised many defenses. He argued that the levy counts were invalid, as they were continuous levies, which apply only to "salary or wages." Because his partnership draws were neither salary nor wages, he contended that he lacked the requisite intent by ignoring the levies. He also said that an attorney opined that the levies did not apply to him.

In its jury instructions, the trial court defined "salary or wages" as follows:

> The funds levied against were the defendant's "salary," if they represent remuneration paid to defendant on an annual basis, but were predetermined, or owed, to be paid out (or

advanced) at regular intervals (for example, weekly, bi-weekly, monthly or quarterly) in a fixed amount.

The funds levied against were "wages" if they were remuneration for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash. You must use your common-sense understanding of any terms not specifically defined here, including "employee" and "employer."

The jury returned guilty verdicts on the tax evasion count, the willful failure to file counts, and 24 of the 26 levy counts.[3] The trial court sentenced Wanland to 46 months in prison and 36 months of supervised release.

## III.    STANDARD OF REVIEW

A district court's denial of a motion to dismiss an indictment based on its interpretation of a federal statute and its denial of a motion for a judgment of acquittal are both reviewed de novo. *United States v. Olander*, 572 F.3d 764, 766 (9th Cir. 2009); *United States v. Sanchez*, 639 F.3d 1201, 1203 (9th Cir. 2011). "We review the district court's formulation of jury instructions for an abuse of discretion, and we review de novo whether the instructions misstated or omitted an element of the charged offense." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010) (citation omitted). "The district court's conclusion regarding the applicability of

---

[3] The government voluntarily dismissed five levy counts prior to trial.

a statute of limitations is a matter of law reviewed de novo." *United States v. Workinger*, 90 F.3d 1409, 1412 (9th Cir. 1996). "Res judicata claims are reviewed de novo." *Intriplex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

## IV. ANALYSIS

### A. Legal Sufficiency of The Levy Counts

On appeal, Wanland renews his attacks on the levy counts, arguing that his partnership draws were neither salary nor wages as a matter of law and fact. The district court correctly left that decision to the jury, and ample evidence supported the guilty verdicts on these counts.

An inquiry into tax evasion does not end with how the defendant labels his income. Otherwise, evaders could paint their salary and wages as "fruits of labor," "donations for work," or "gifts from my boss" and avoid the levy process altogether. The district court put it this way: "[n]obody in his right mind would think that somehow or other lawyer's draws ought to be treated differently than wages and salary in general." Wanland cannot point to anything that suggests Congress had a different take.

Rather than limiting our review to labels, we look at the substance of Wanland's partnership draws, which the district court correctly cast as a jury question. The district court's jury instruction, quoted above, captured the essence of the inquiry. Under the partnership agreement, Wanland was entitled to receive routine, equal monthly draws that were remuneration solely for services provided to the partnerships' clients. These draws were set at a predetermined amount,

identical to wages or salary in all relevant respects. This included a routine $3,000 per month payment for the rent on his house. That Wanland occasionally withdrew more money in one month than another does not change the routine income he was guaranteed and that he received for his work as a lawyer.

Not surprisingly, other courts agree with our analysis. For example, in *United States v. Jefferson-Pilot Life Insurance Co.*, 49 F.3d 1020 (4th Cir. 1995), a civil case, the Fourth Circuit held that section 6331's "salary or wages" language covered commissions paid to an insurance salesman, rejecting the same argument that Wanland now makes. *Id.* at 1021. Even though the defendant did not label his commissions as "salary" or "wages," they were payments made to the individual on a repeat basis and at consistent amounts. *Id.* As such, they fit directly within "[t]he underlying purpose of the [continuous levy] provision," which was designed "to provide a means of levying upon remuneration payable to a taxpayer on a recurring basis for personal services performed for the payor." *Id.* at 1022.

Similarly, in *United States v. Moskowitz, Passman & Edelman*, 603 F.3d 162 (2d Cir. 2010), another civil case, the Second Circuit applied *Jefferson-Pilot* to law firm partnership draws. The court explained that the "salary or wages" provision applies to "*compensation for services* paid in the form of fees, commissions, bonuses, and *similar items*." *Id.* at 168 (quoting 26 C.F.R. § 301.6331-1(b)(1)). Partnership draws are similar to fees, commissions, or bonuses, and are compensation directly for services rendered to clients. *Id.* at 168–69; *see also Mission Primary Care Clinic, PLLC v. Dir., Internal Revenue Serv.*, 370 F. App'x 536 (5th Cir. 2010) (holding that payments remunerated to doctor-members of a

PLLC could constitute "salary or wages" because the "critical characteristics" of the payments were similar to traditional salaries or wages).

Wanland falls back on the rule of lenity to argue that we should dismiss his levy convictions because the extent of the "salary or wages" language was ambiguous.  But the rule of lenity has limited application generally, and none here. While no previous Ninth Circuit case has addressed this particular issue, that is not determinative.  "[A] lack of prior appellate rulings on the topic does not render the law vague." *United States v. Kahre*, 737 F.3d 554, 568 (9th Cir. 2013) (quoting *United States v. George*, 420 F.3d 991, 995 (9th Cir. 2005)).  "The rule of lenity only applies . . . where there is a grievous ambiguity or uncertainty in the language and structure of the statute, such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute."  *Id.* at 572 (quoting *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011)).

Lenity is especially inappropriate here, as "[i]nclusion of a scienter requirement 'mitigates a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'"  *Id.* (quoting *United States v. Guo*, 634 F.3d 1119, 1123 (9th Cir. 2011)); *see also Guo*, 634 F.3d at 1123 (reasoning that a scienter requirement in the statute "alleviates any concern over the complexity of the regulatory scheme").  The jury had to find that Wanland acted with the intent "to evade and defeat the collection of the assessed taxes," a stringent mens rea element.  Moreover, the continuous levy, served on Wanland, stated that "[w]ages and salary include fees, commissions, and bonuses."  Wanland was therefore on notice that his rigid definition of "salary or wages" may have been incorrect.  *See*

*United States v. Cabaccang*, 332 F.3d 622, 635 n.22 (9th Cir. 2003) (explaining that the rule of lenity is concerned with ensuring that "defendants have notice of the criminality of their actions" and "that legislatures . . . define criminal activity" (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971))). Moreover, as requested by Wanland, the district court gave the jury advice of counsel and good faith instructions. Had the jury believed Wanland relied on an attorney or was genuinely uncertain about his responsibilities under the law, it could have acquitted him. Accordingly, neither the district court nor the jury erred in concluding that Wanland's monthly income from his law practice qualified as "salary or wages" under section 6331(e).

Finally, Wanland argues that it is incorrect to treat partnership draws as "salary or wages" under section 6331(e) because the Internal Revenue Code treats self-employment income differently from the salary and wages of employees. He contends that the "salary" and "wages" referenced in section 6331 must have the same meanings that they have in the employment tax code. We disagree. "There is no indication in the Code . . . that Congress intended to coordinate the meanings of these terms between the two separate sets of provisions." *Jefferson-Pilot*, 49 F.3d at 1023. As the Fourth Circuit pointed out, "[i]f Congress had so intended, it easily could have included in § 6331(e) a cross reference to the employment tax provisions, as it has done repeatedly in other sections of the Code." *Id.*

Instead, like the district court, we construe "salary or wages" in section 6331(e) in accordance with its plain or natural meaning. Black's Law Dictionary defines a "salary" as "[a]n agreed upon compensation for services—esp. professional or semiprofessional services—usu. paid at

regular intervals on a yearly basis, as distinguished from an hourly basis." The jury instructions closely tracked this definition. Here, there was ample evidence for the jury to find that Wanland's partnership draws were remuneration paid for professional services (legal services), defined on a yearly basis (based on the year's profits), and payable at regular intervals (monthly), rendering them a "salary."

### B. Statute of Limitations—Levy Counts

Wanland argues that the district court erred in not dismissing the levy counts because they exceeded the three-year statute of limitations. All of the levy counts covered 2006 transactions, while the superseding indictment was returned in January 2012. The district court was correct to reject this argument and apply a six-year statute of limitations.

Criminal tax proceedings generally have a three-year statute of limitations. *See* 26 U.S.C. § 6531. There are, though, several exceptions for which a six-year statute of limitations applies. *Id.* § 6531(1)–(8). Under section 6531(1), tax offenses "involving the defrauding or attempting to defraud" the government have a six-year statute of limitations. "Section 6531(1), by its own terms, does not require that a defendant be expressly indicted for tax fraud." *Workinger*, 90 F.3d at 1413. Congress intended for a six-year statute of limitations for "all offenses which are fairly identifiable as those in which fraud is an essential ingredient, by whatever words they be defined." *Id.* at 1414 (quoting *United States v. Grainger*, 346 U.S. 235, 244 (1953)). This includes statutes not labeled "'fraud,' if those offenses did reflect fraudulent activity." *Id.* at 1413.

As noted above, section 7206(4) requires one to act "with intent to evade or defeat the assessment or collection of any tax imposed by this title." An individual must know of a tax liability and a levy on his property to remedy that tax liability, but still deliberately take some action to "evade or defeat" that levy. As in *Workinger*, that is exactly the type of "defrauding" that section 6531(1) was intended to cover. We agree with the district court that the six-year statute of limitations of section 6531(1) applies to prosecutions under section 7206(4).

Wanland makes several arguments in favor of a three-year statute of limitations. First, he contends that continuing to interpret section 6531(1) broadly would allow the six-year statute of limitations exception to become more prevalent than the three-year rule. This is not persuasive in light of *Workinger*. As this court explained, Congress intended for the exception for offenses involving fraud to sweep broadly and "cover most acts that a person could perform in an attempt to avoid paying taxes." *Workinger*, 90 F.3d at 1413; *see also id.* (acknowledging the reality that section 6531(1) and its counterpart, section 6531(2), may be broad enough to effectively "render the 3-year period almost irrelevant" (quoting Patricia T. Morgan, *Tax Procedure and Tax Fraud in a Nutshell*, § 13.1.7 (1990))). We thus do not hesitate to apply the six-year statute of limitations to violations of section 7206(4), which necessarily require fraudulent conduct.

Second, Wanland argues more specifically that applying section 6531(1) to section 7206(4) is inappropriate because one of the eight specifically enumerated exceptions, section 6531(5), is for a crime under another subsection of section 7206—section 7206(1). He argues that because Congress

elected to extend the statute of limitations for a particular subsection of section 7206, it deliberately omitted the other subsections of section 7206.  This argument is likewise untenable under *Workinger*.  Specifically enumerated exceptions providing for a six-year statute of limitations were included so that Congress could be "sure that mere technical distinctions would not make a difference in the statute of limitations." *Workinger*, 90 F.3d at 1413.  In other words, they reflect a rather-be-safe-than-sorry approach, and are sometimes duplicative of conduct that would also be encompassed under sections 6531(1) and (2).  *Id.*  That Congress specifically enumerated that section 7206(1) have a six-year statute of limitations says little, if anything, about the statute of limitations for section 7206(4).

Finally, Wanland points out that the Internal Revenue Manual (IRM) provides that the statute of limitations for section 7206(4) is three years.  IRM § 9.1.3.3.7.3.1.  The IRM, however, does not bind this court.  *See Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006) (stating that the IRM "does not have the force of law and does not confer rights on taxpayers"); *see also United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001) (explaining that agency manuals are "beyond the *Chevron* pale," and we afford them deference only to the extent that we value the "thoroughness, logic, and expertness" of the writer).  For the above described reasons, we do not conclude that the IRM's recommendation is persuasive, and we hold that the six-year statute of limitations applies to violations of section 7206(4).

## C.  Res Judicata

Wanland argues that because his debts were discharged in bankruptcy, he no longer owes the debts for the unpaid taxes

from which the criminal charges arose. According to Wanland, the government should "be precluded from pursuing a criminal action concerning the assets and tax liabilities the bankruptcy court already discharged." The district court properly rejected this argument.

Res judicata requires Wanland to establish three elements: (1) privity between parties in the actions; (2) an identity of claims between actions; and (3) a final judgment on the merits in the previous action. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

First, Wanland fails to demonstrate privity between the parties. Courts have not assumed that all federal agencies are in privity for res judicata purposes, and instead look to the substance of claims. *See Sunshine Anthracite Coal Co v. Adkins*, 310 U.S. 381, 402–03 (1940) (explaining that while there are occasions when privity exists between different officers or agencies of the government, this consideration is not just a "matter of form, but of substance"); *see also United States v. Ledee*, 772 F.3d 21, 30 (1st Cir. 2014) ("[C]ourts have recognized in the preclusion context the folly of treating the government as a single entity in which representation by one government agent is necessarily representation for all segments of the government."). For example, in *United States v. Hickey*, 367 F.3d 888 (9th Cir. 2004), this court held that the Securities and Exchange Commission (SEC) and the United States in a criminal prosecution are not in privity because when the SEC brings an action under the Securities Act of 1933 or Securities Exchange Act of 1934, it is "not acting as 'the federal sovereign vindicating the criminal law of the United States.'" *Id.* at 893 (quoting *United States v. Heffner*, 85 F.3d 435, 439 (9th Cir. 1996)).

Just as in *Hickey*, the IRS's role in pursuing tax debts in a bankruptcy action is not to act as a "federal sovereign vindicating the criminal law." In a bankruptcy proceeding, the IRS is acting as a creditor trying to recover debts. In this capacity, its interests will often differ from the interests of the United States government in a criminal prosecution. For example, if the IRS were in a position where it had to "make a claim against the estate and at the same time preserve a subsequent criminal prosecution" against a defendant, it "would have to pursue an opposition to the bankruptcy based on fraud, even if to do so might be contrary to its interest" as a debtor. *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991).

The different roles of the IRS and the United States government in criminal prosecutions correspond to the different purposes of bankruptcy and criminal proceedings. The purpose of a bankruptcy action is to help those in bad financial positions move forward, not, as with a criminal prosecution, to resolve harms against society deserving of punishment. *See Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1085 (9th Cir. 2000) ("The purpose of bankruptcy is to protect those in financial, not moral difficulty," and the bankruptcy code "reflects [that] philosophy."); *Tatum*, 943 F.2d at 381–82 (referring to bankruptcy proceedings and criminal tax prosecutions, explaining that "[t]he pursuit of one proceeding will seldom resolve the other"). Thus, the IRS in a bankruptcy action and the United States government in a criminal action are not in privity.

While we need not go further because Wanland has failed on the first prong, he raises several arguments related to the identity of claims prong that we briefly address. He takes issue with the district court's reasoning that res judicata

cannot apply here because the bankruptcy court had no authority to adjudicate criminal matters. He points primarily to *United States v. Liquidators of European Federal Credit Bank*, 630 F.3d 1139 (9th Cir. 2011), to argue that, even if the government could not have made a particular claim in an earlier proceeding, it can still be barred from making that claim in a second proceeding. In *Liquidators*, this court held that res judicata barred the government from bringing a criminal forfeiture proceeding with respect to the same property involved in a prior civil forfeiture proceeding because both claims involved the same "transactional nucleus of facts." *Id.* at 1151–52. This was in spite of the fact that the government could not have brought a criminal forfeiture action in the civil forfeiture proceeding because the criminal and civil forfeiture statutes do not permit consolidation. *Id.* at 1151.

This court acknowledged that the result of its holding no longer fit within the pattern reflected in our circuit's case law that res judicata only applies where a claim could have been asserted in a previous action. *Id.* (citing *Tahoe-Sierra*, 322 F.3d at 1078). It explained, however, that this decision was "driven by the unique context of forfeiture." *Id.* at 1152. "Unlike in other contexts, the two types of forfeiture actions *always* seek the same result," "arise from exactly the same facts," "necessarily always involve the same potential plaintiff," and "involve the same general determination." *Id.* In sum, "[t]he two forfeiture options—civil and criminal— provide the government two different paths to reaching the same goal—forfeiture of the property." *Id.* For the reasons described above, the IRS in bankruptcy proceedings and the United States government in criminal prosecutions are not the same plaintiff, nor do bankruptcy and criminal actions purport to achieve the same goal. Accordingly, it would be

inappropriate to expand *Liquidators*, decided for the peculiarities of the forfeiture context, to the facts here.[4]

**AFFIRMED**.

---

[4] We also doubt that there has been a final judgment on the merits with respect to Wanland's tax debts. Wanland received a general discharge under 11 U.S.C. § 727. Under a general discharge order, most debts are automatically discharged. There are a few exceptions, though, including for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." *Id.* § 523(a)(1)(C). In accordance with the statutory exceptions to discharge, Wanland was warned in his discharge order that some types of debt are *not* discharged, including "debts for most taxes." Even if, as Wanland points out, the intent requirements for demonstrating "willful tax evasion" for non-dischargeability of debt and willful tax evasion for a criminal tax evasion charge are the same, *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 669 (9th Cir. 2014), the issue had likely not been adjudicated prior to the jury verdict in this trial.