155 T.C. No. 5

UNITED STATES TAX COURT

DOUGLAS M. THOMPSON AND LISA MAE THOMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6613-13.                          Filed August 31, 2020.


R commenced an examination of returns filed by Ps. R's revenue agent sent Ps letters offering to settle Ps' tax liabilities associated with a certain transaction. Terms of the settlement offers required Ps to accept penalties calculated at reduced rates on any related underpayment that could later be determined. Ps did not accept these offers. The revenue agent completed the examination and obtained written approval from his acting immediate supervisor for asserting penalties at the statutory rates. Thereafter, R sent Ps a notice of deficiency determining the deficiencies and penalties for 2003 through 2007.

Ps moved for partial summary judgment regarding whether the penalties were properly approved under I.R.C. sec. 6751(b)(1). Ps argue that R's revenue agent should have obtained supervisory approval before sending the settlement offers and that the approval of an acting immediate supervisor does not satisfy I.R.C. sec. 6751(b)(1).

Held:  R's settlement offers to Ps did not constitute "the initial determination of * * * [a penalty] assessment", necessitating prior supervisory approval under I.R.C. sec. 6751(b)(1).

Held, further, The supervisory approval requirement of I.R.C. sec. 6751(b)(1) was satisfied when the revenue agent's immediate supervisor approved the penalties, even though the immediate supervisor held the position on an interim basis.

Held, further, Ps' motion for partial summary judgment will be denied.

Joseph A. DiRuzzo III and Daniel M. Lader, for petitioners.

Thomas A. Deamus and Robert C. Marshall, for respondent.

OPINION

GREAVES, Judge:  This case is before the Court on petitioners' motion for partial summary judgment under Rule 121 (motion).[1]  A revenue agent sent letters to petitioners offering to settle their tax liabilities as to an abusive transaction. Terms of the settlement offers required petitioners to agree to pay section 6662 accuracy-related penalties at a reduced rate on any underpayment of tax that might

_____

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986 (Code), as amended.

later be calculated as to the transaction. Petitioners did not accept these offers. The revenue agent later ascertained deficiencies for 2003 through 2007 and penalties under sections 6662(h) and 6662A at the statutory rates. The revenue agent obtained written approval from his acting immediate supervisor for assertion of these penalties before respondent sent petitioners a notice of deficiency determining the deficiencies and penalties. Thereafter, petitioners timely filed a petition in this Court seeking redetermination of the deficiencies and penalties.

In the motion, petitioners argue that respondent failed to comply with section 6751(b)(1), which provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination". We disagree. Accordingly, we will deny the motion.

Background

The following undisputed facts are drawn from the parties' motion papers and the attached exhibits, as well as other documents filed by the parties in the instant case. Petitioners resided in California when they filed the petition.

Petitioners engaged in what respondent calls a distressed asset trust transaction (DAT transaction), which they reported on their Form 1040, U.S. Individual Income Tax Return, for 2005. Respondent assigned Revenue Agent

James Damasiewicz (RA Damasiewicz) to examine tax returns that petitioners had filed for multiple years, including 2005.

RA Damasiewicz mailed to petitioners a letter dated May 10, 2007 (2007 letter), wherein he stated that he was "aware that * * * [petitioners] participated in an abusive transaction" and offered them "the opportunity to resolve * * * [their] tax liabilities associated with that transaction in accordance with the terms set forth in * * * [Announcement 2005-80 (Oct. 28, 2005)]."[2] Announcement 2005-80 offered settlements to investors in various types of tax transactions with accuracy-related penalties below the statutory rates to encourage participation.

The 2007 letter instructed petitioners to complete the enclosed Form 13750, Election to Participate in Announcement 2005-80 Settlement Initiative, by June 14, 2007, if they chose to accept the settlement terms. The Form 13750 directed petitioners to provide information related to the DAT transaction, including the tax years involved, the amounts of tax at issue, and the amounts of tax benefits claimed on the tax returns. Furthermore, the settlement terms required petitioners to pay "a section 6662 accuracy-related penalty in an amount equal to 10 percent of the underpayment attributable to this transaction." The 2007 letter did not

---

[2]The 2007 letter acknowledged that the DAT transaction was not a transaction included in the Announcement 2005-80 settlement initiative. The DAT transaction became a listed transaction in Notice 2008-34, 2008-1 C.B. 645.

identify a tax period or tax form to which it related, provide an underpayment

amount, or request petitioners' consent to assessment and collection.[3]  Petitioners

did not accept the settlement offer in the 2007 letter.

RA Damasiewicz mailed a second letter to petitioners dated February 23,

2009 (2009 letter),[4] wherein he again offered to settle the DAT transaction on

specific terms, including the following:  "You will agree to a section 6662

accuracy-related penalty in an amount equal to 15 percent of the underpayment

attributable to the * * * [DAT transaction].  The Service will not assess a section

6662A penalty against you with respect to the * * * [DAT transaction]."  Like the

2007 letter, the 2009 letter did not identify a tax period, form number, or

underpayment amount and did not request petitioners' consent to assessment and

collection.  The letter explained that if petitioners did not accept the settlement

terms, the IRS would "complete its examination and fully develop the facts" of

---

[3]By contrast, the notice of deficiency respondent ultimately sent petitioners, which is discussed below, included Form 4089, Notice of Deficiency--Waiver, and Form 4549-A, Income Tax Discrepancy Adjustments.  These two forms together include all the elements listed in the sentence accompanying this note.

[4]In the case of both the 2007 letter and the 2009 letter, respondent sent separate copies of the letter to each of Douglas M. Thompson and Lisa Mae Thompson.  The letters appear to be standard form letters.

petitioners' case and "impose applicable penalties under the Internal Revenue Code." Petitioners did not accept the settlement offer in the 2009 letter.

RA Damasiewicz completed his examination of petitioners' returns in 2009. He concluded that petitioners owed tax and penalties under sections 6662(h) and 6662A for tax years 2003 through 2007. On December 18, 2009, RA Damasiewicz's acting immediate supervisor, Linda Barath, signed a memorandum (penalty memorandum) approving RA Damasiewicz's conclusion as to the assertion of the penalties.

Respondent sent petitioners a notice of deficiency dated December 18, 2012, wherein respondent determined deficiencies and penalties under sections 6662(h) and 6662A for tax years 2003 through 2007. Petitioners timely petitioned this Court for redetermination of the deficiencies and penalties. Petitioners filed the motion on December 27, 2019.

## Discussion

### I.  Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant a motion for summary judgment, or partial summary judgment regarding an issue, when there is no

genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

The sole question presently before the Court is whether the penalty approval requirement of section 6751(b)(1) was satisfied. The material facts necessary for deciding the motion are not in dispute. We find that the issue may be adjudicated summarily.

II.    Analysis

Petitioners contend that the requirement of section 6751(b)(1) for the revenue agent to obtain supervisory approval of the penalties listed in the penalty memorandum was not met, because acting immediate supervisor Barath signed the penalty memorandum that approved the penalties after RA Damasiewicz sent the 2007 letter and the 2009 letter. Petitioners also assert that acting immediate supervisor Barath's approval was inadequate, because she could not provide "meaningful review" of the penalty determination. Finally, petitioners argue that

to the extent section 6751(b)(1) is ambiguous, it should be interpreted in the taxpayer's favor. We address each of these arguments in turn.

A. Timeliness

Section 6751(b)(1) requires written supervisory approval of the "initial determination of * * * [a penalty] assessment", but it contains no express requirement that the approval be obtained at any particular time before the penalty is assessed. Chai v. Commissioner, 851 F.3d 190, 218 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Observing that the Code uses the words "determine" and "determination" to denote "a communication with a high degree of concreteness and formality", we held that, outside a judicial proceeding,[5] the section 6751(b)(1) "initial determination" is embodied in the document by which the Examination Division (Exam) "formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties." Belair Woods, LLC v. Commissioner, 154 T.C. ___, ___ (slip op. at 24-25) (Jan. 6, 2020). This means supervisory approval is required no later than (1) the date

---

[5]The IRS may assert penalties for the first time in a Tax Court proceeding. See Belair Woods, LLC v. Commissioner, 154 T.C. ___, ___ (slip op. at 12) (Jan. 6, 2020) (holding that written approval is required "no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty" (emphasis added) (quoting Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42)); Koh v. Commissioner, T.C. Memo. 2020-77, at *2.

the IRS issues the notice of deficiency,[6] or, if earlier, (2) the date the IRS formally communicates to the taxpayer Exam's determination to assert a penalty and notifies the taxpayer of his right to appeal that determination.  Id. at ___ (slip op. at 4) (citing Clay v. Commissioner, 152 T.C. 223, 249 (2019)).[7]  In an income tax deficiency case, the latter document is often a 30-day letter, see, e.g., Clay v. Commissioner, 152 T.C. at 249,[8] which gives the taxpayer 30 days to seek a conference with the IRS Office of Appeals (Appeals),[9] or else the IRS may issue a

---

[6]The taxpayer may challenge a notice of deficiency in Tax Court.  See sec. 6213(a).

[7]In the latter case, a taxpayer's right to administrative appeal may be conditioned on the taxpayer's agreeing to extend the period of limitations on assessment to allow time for the IRS Office of Appeals to consider the case.  See Oropeza v. Commissioner, T.C. Memo. 2020-111, at *7-*8; Carter v. Commissioner, T.C. Memo. 2020-21, at *29-*31.  Absent such an agreement, a 30-day letter is not routinely issued.  See, e.g., Oropeza v. Commissioner, at *3-*5; Carter v. Commissioner, at *6-*7.

[8]Supervisory approval is required for a letter that asserts a penalty and offers the taxpayer a right to pursue an Appeals conference, even if the letter is not the colloquially termed "30-day letter."  See Kroner v. Commissioner, T.C. Memo. 2020-73, at *29-*30.

[9]This office is now named the "Independent Office of Appeals".  See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001(c), 133 Stat. at 985 (2019).

notice of deficiency determining the penalties, see sec. 601.105(d)(1), Statement of Procedural Rules.[10]

The offer letters in this case do not reflect an "initial determination" because they do not notify petitioners that Exam had completed its work. Rather than determining that petitioners are liable for penalties of specific dollar amounts, subject to review by Appeals or the Tax Court, each letter offers to settle penalties arising from the DAT transaction on certain terms, including substatutory penalty rates, which are based not on an audit but on Announcement 2005-80. When petitioners failed to accept the offers, RA Damasiewicz still had work to do--the 2009 letter explicitly says the IRS had not completed its examination or fully developed the facts of petitioners' case. Furthermore, the 2009 letter warns that declining the settlement offer would result in "applicable penalties," without stating which penalties, if any, might end up being "applicable" to petitioners' facts. An offer letter like the ones at issue does not require supervisory approval because it is not a "determination" at all, but a preliminary proposal of the revenue agent within an ongoing examination.

---

[10]In addition to our caselaw, sec. 6212(a) and sec. 601.105(d)(1), Statement of Procedural Rules, indicate that both a notice of deficiency and a 30-day letter reflect a determination by the IRS.

Petitioners contend that our interpretation of section 6751(b)(1) is at odds with the purpose set forth in its legislative history, that penalties "only be imposed where appropriate and not as a bargaining chip." S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601. We stated in Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 22-24), that "[a]n RA's reference to penalties at any stage of an examination", including mentioning the possibility of penalties "with varying shades of conviction" during meetings or calls with the taxpayer, "might be viewed colloquially as a 'bargaining chip.' But this metaphor from the legislative history cannot displace the statutory text." As in Belair Woods, we will not let petitioner's legislative history argument animate our decision.

B. "Meaningful Review"

Petitioners contend that the supervisory approval requirement was not met because an acting immediate supervisor signed the penalty memorandum. Petitioners argue that an acting immediate supervisor is unable to provide "meaningful review" of the initial determination. We rejected a similar argument in Belair Woods, explaining that "'we decline to read into section 6751(b)(1) the subtextual requirement' that respondent demonstrate the depth or comprehensiveness of the supervisor's review." Belair Woods, LLC v. Commissioner, 154 T.C. at ___ (slip op. at 27) (quoting Raifman v.

Commissioner, T.C. Memo. 2018-101, at *61). The only requirement is that the revenue agent obtain the approval of his immediate supervisor. Id. at ___ (slip op. at 26-28) (explaining that approval of penalties by an IRS employee, whose supervision of the revenue agent began somewhat late in the examination process, satisfies section 6751(b)(1)); see also Oropeza v. Commissioner, T.C. Memo. 2020-111, at *10. Acting immediate supervisor Barath was RA Damasiewicz's immediate supervisor when she approved the proposed penalties. Her signature on the penalty memorandum satisfies section 6751(b)(1).

C. Rule of Lenity

In an effort to bolster the foregoing arguments, petitioners invoke the rule of lenity and the related strict construction canon, by which ambiguity in revenue-raising and penalty laws should be construed in the taxpayer's favor. See, e.g., Rand v. Commissioner, 141 T.C. 376, 393-394 (2013); Mohamed v. Commissioner, T.C. Memo. 2013-255, at *25-*27.

The rule of lenity does not change our conclusion. The Supreme Court has explained that the rule may apply "only if, 'after seizing everything from which aid can be derived,' . . . we can make 'no more than a guess as to what Congress intended.'" Muscarello v. United States, 524 U.S. 125, 138 (1998) (quoting United States v. Wells, 519 U.S. 482, 499 (1997)). "To invoke the rule," the Court

continues, "we must conclude that there is a 'grievous ambiguity or uncertainty' in the statute." Id. at 138-139 (quoting Staples v. United States, 511 U.S. 600, 619 n.17 (1994)) (internal quotation marks omitted). The Court of Appeals for the Ninth Circuit, the venue for appeal of this case, see Thompson v. Commissioner, 148 T.C. 59, 61 n.3 (2017), has applied roughly the same principles, see United States v. Wanland, 830 F.3d 947, 953-954 (9th Cir. 2016); United States v. Kahre, 737 F.3d 554, 572 (9th Cir. 2013). The Supreme Court and the Court of Appeals for the Ninth Circuit make the additional point that the rule of lenity does not apply just because it is possible to articulate a narrower construction of the statute than the one advanced by the Government. Muscarello, 524 U.S. at 138; Kahre, 737 F.3d at 572.

Petitioners assert that the statutory phrase "the initial determination of * * * [a penalty] assessment" is ambiguous as to precisely when statutory approval is required; however, "the simple existence of some statutory ambiguity" does not trigger application of the rule of lenity. Muscarello, 524 U.S. at 138. Like the decision in Muscarello, our analysis supra Part II.A "is based on much more than a 'guess as to what Congress intended'". Id. at 139. The relevant caselaw interpreting the text of section 6751(b)(1), based on the established meaning of the word "determination" in the tax context, culminates in the logical conclusion that

the language does not encompass a settlement offer within an ongoing examination.

Petitioners also assert that the rule of lenity bars any penalty assessment against them to the extent there is any question whether there was a meaningful review of the initial determination of the penalty assessment. Section 6751(b)(1) is not ambiguous in this regard. As explained <u>supra</u> Part II.B, the statute does not impose a "meaningful review" requirement.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.